**GRUPO CONDUMEX S.A.
de C.V., Plaintiff**

v.

**SPX CORPORATION, et al., Defendant**

**No. 3:99CV7316.**

United States District Court,
N.D. Ohio,
Western Division.

Sept. 24, 2002.

Anthony J. Rotondi, Howard Zelbo, Jeffrey A. Rosenthal, Robert T. Greig, Cleary, Gottlieb, Steen & Hamilton, New York City, Margaret G. Beck, Martin J. Witherell, Fuller & Henry, Toledo, OH, for Plaintiff.

Evan S. Williams, Michael E. Barry, Gardner, Carton & Douglas, Chicago, IL, James P. Silks, Jr., Theodore M. Rowen, Truman A. Greenwood, Spengler Nathanson, Toledo, OH, John F. Ward, Jr., Jenner & Block, Chicago, IL, for SPX Corp.

Jacqueline M. Boney, Joseph P. Thacker, Richard S. Walinski, Cooper & Walinski, Toledo, OH, for Sealed Power Technologies Limited Partnership.

David C. McBride, Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE, Patricia B. Fugee, Roetzel & Andress, Toledo, OH, Peter C. John, Williams, Montgomery & John, Chicago, IL, for Dana Corp.

## ORDER

CARR, District Judge.

This case began as a suit by the plaintiff, Grupo Condumex S.A. de C.V. (Condumex), a Mexican manufacturer of motor vehicle parts, against SPX Corporation and Dana Corporation, United States motor vehicle parts manufacturers. Condumex and SPX were joint venturers in a Mexican auto parts manufacturer, Promotora de Industrias Mecanicas, S.A. de C.V. (Promec). SPX held its Promec shares in

a subsidiary, Sealed Power Technologies Corporation of Nevada (SP Nevada), which, in turn, was a part of SPX' Sealed Power Division.

Dana purchased SPX' Sealed Power Division, obtaining thereby the shares and assets of SP Nevada (those assets being solely the Promec shares originally acquired by SPX). Condumex objected to the transfer of the Promec shares to Dana, which itself was a joint venturer in another Mexican parts manufacturer that competes with Condumex. Condumex asserted that it had a right of first refusal with regard to the Promec shares, and that SPX had breached that right through the Dana/SPX transaction.

In response to Condumex' objections, SPX took the position, which Dana shared, that any right of first refusal had not been violated because the Dana had not purchased the Promec shares directly. Instead, its acquisition had been indirect— i.e., through its purchase of the Sealed Power Division, one part of which was SP Nevada, the owner of the Promec shares.

To enforce its rights of first refusal, Condumex brought this suit. After extensive proceedings, I agreed that SPX had breached a right of first refusal SPX had granted to Condumex in a Stockholders' Agreement between SPX and Condumex. That Stockholders' Agreement had formed the Promec joint venture. I ordered Dana to endorse and deliver the Promec shares to Condumex.

Dana objected to being required to deliver the Promec shares to Condumex. Dana argued that it had not, in its acquisition of SP Nevada, and with it, control over the Condumex shares, violated any agreement to which it had been a party, or which imposed any obligations on it. Thus, because it was not a party to the SPX/Condumex Stockholders' Agreement, Dana contended that it could not lawfully

be ordered to provide specific performance pursuant to any of that Agreement's terms.

After entry of my order directing Dana to endorse and deliver the Promec shares to Condumex, Dana filed a motion for relief from that order. That motion, which was based, to a considerable extent, on Dana's concerns about adverse tax implications if it, rather than SPX, was compelled to deliver the Promec shares to Condumex, is the subject of this order.

After Dana initially filed its motion for relief, I declined to rule on its request that it not be the party required to deliver the Promec shares to Condumex. Instead, I elected to hold Dana's objection under advisement, stating:

> Dana's Motion for relief from order remains under advisement with respect to Dana's request to [sic] that any tax implications resulting from Dana's delivery and endorsement of the shares of Promec to Condumex redound to SPX and not Dana or [SP Nevada]; in all other respects, Dana's motion is denied.

[Docs. 221, 222, 225].

Thereafter, through oversight, I ordered the case closed. This was a mistake because Dana's motion for relief remained pending with regard to its objection to being required to deliver the Promec shares to Condumex. On Dana's motion, that erroneous designation was deleted and the case was reopened, thereby enabling a ruling on Dana's motion for relief. Following subsequent briefing, that motion is decisional.

For the reasons that follow, Dana's objection to the directive that it deliver the Promec shares is hereby overruled.

## Discussion

Through its motion, Dana asks that I make several rulings, namely, that:

1. SPX' indirect (i.e., through its sale of its Sealed Power Division to Dana) transfer of the Promec shares to Dana was a nullity and did not transfer any interest in Promec to Dana;

2. SPX, as the breaching party of the SPX/Condumex Stockholders' Agreement, was the proper party to specifically perform under that Agreement;

3. Dana endorsed and delivered the Promec shares to Condumex pursuant to this court's order, in fulfillment of SPX' obligation to transfer the Promec shares to Condumex under the Stockholders' Agreement; and

4. SP Nevada acted either as agent of SPX, or as a constructive trustee, when the Promec shares were endorsed and delivered to Condumex.

(Doc. 121).

■ SPX argues that I no longer have jurisdiction to provide any relief to Dana and that, in any event, Dana is not entitled to any relief. Focusing on Dana's expressed and manifest concerns with the potential tax consequences of my order directing Dana, over its objection, to endorse and deliver the Promec shares to Condumex, SPX points out that there is no presently pending dispute between the IRS and Dana, and there might never be a dispute between them with regard to Dana's tax treatment of the Promec shares. Thus, SPX, argues, there is no case or controversy regarding any tax obligation.

Dana responds by noting that its returns are audited on a regular basis. Though it declared no tax due and owing as a result of the transfer of the Promec shares, there can be no question that its return for the pertinent year will be audited. That audit, Dana asserts, may result in a claim by the IRS that Dana should have declared such liability.

At present, no one can say whether the IRS will take that position. If it does not, anything that I say about the potential tax implications of my order, will have been said unnecessarily. At best, my comments will be advisory in nature.

Thus, I am persuaded that it is inappropriate for me to address the issue that Dana wants, and has been persistently seeking to have resolved—namely the "tax implications resulting from Dana's delivery and endorsement of the shares of Promec to Condumex." What happened, happened—and it is for the IRS, if it disagrees with Dana's interpretation, to make that determination.

I decline, accordingly, to address two of Dana's four requests for rulings: namely, that I rule, with regard to the first request, that SPX's indirect transfer of the Promec shares to Dana was a nullity and did not transfer any interest in Promec to Dana; and, with regard to the fourth request, that SP Nevada acted either as agent of SPX, or as a constructive trustee, when the Promec shares were endorsed and delivered to Condumex. Though the parties and I have directed considerable attention to those questions, I conclude that answers may never be required from me or anyone else, if the IRS determines, following its audit of Dana, that Dana's return was accurate with regard to its treatment of the Promec share transfer.

There is a genuine dispute between Dana and SPX with regard to the propriety of the remaining two items as to which Dana seeks rulings: namely, the second request, that SPX was the proper party to fulfill its obligations under the Stockholders' by delivering the Promec shares to Condumex, and the third request, that the Promec shares were endorsed and delivered to Condumex on February 9, 2000, by Court Order, to fulfill SPX's obligation to

transfer the Promec shares to Condumex under the Stockholders' Agreement.

Each party clearly views the outcome of a decision as to these requests as potentially affecting substantial interests: namely which of them will wind up paying a capital gains tax as a result of the transaction. Though that is a decision for the IRS, it cannot be doubted, in view of the fact that the Promec shares indisputably increased in value over the passage of time, that either Dana or SPX will in all likelihood be assessed a substantial tax obligation. The fight between them is live and actual, and the outcome of that fight might be affected by a ruling on Dana's second and third requests.

Dana did not ask me to hold my ruling on its objection in abeyance. As to its two remaining requests, therefore, there has continuously been, and continues to be a dispute about the lawfulness of compelling Dana to remedy a breach by SPX of its obligations under the Stockholders' Agreement.

My ruling on these requests, moreover, simply takes care of unfinished business that, under other circumstances, would have been handled prior to the delivery of the shares to Condumex. Dana's objection to being ordered to endorse and deliver the shares was set aside because I did not want to delay the transfer to Condumex. Condumex, whom I had found to have been entitled to the shares, vigorously expressed throughout the proceedings leading up to the transfer that time was of the essence, and that delay was and would be highly prejudicial. I, accordingly, decided not to take more time, and cause more delay or injury to the wronged party, before getting the shares into Condumex' hands.

SPX argues further that Dana can obtain no relief because a post-transfer settlement between Dana and Condumex

moots Dana's tax-based objections. Nothing in that settlement addressed Dana's concern that it was ordered to do something—remedy the breach of a contract to which it was not a party—that it could not lawfully be compelled to do. Its dispute in that regard is with the court and SPX, not Condumex. Thus, the settlement between Dana and Condumex did not moot Dana's objection to having been ordered to deliver the Promec shares to Condumex prior to the decision between Dana and Condumex to settle the differences that thereafter remained between them.

SPX next asserts that Dana's claim is moot because Dana voluntarily changed its position when it settled with Condumex and regained possession of the Promec shares. I see no connection between the fact that Dana currently has the Promec shares and Dana's concern that the earlier, and unrelated, forced transfer by it of those shares was improper.

█ Turning to the merits of Dana's contention that it could not lawfully be ordered to deliver the Promec shares to Condumex, I conclude that the fact that Dana was not a party to the SPX/Condumex Stockholders' Agreement is immaterial. Dana, as the holder of the shares at the time their delivery was ordered was, contrary to its contention, an entirely proper subject of the mandate that it, rather than SPX, deliver the shares.

Dana was unquestionably aware of the provision of the Stockholders' Agreement in which SPX granted the right of first refusal to Condumex. Although Dana was assured by SPX' counsel prior to the sale that that provision did not matter, and although Dana may have been confident that, in any event, that right extended only to a direct transfer of the shares, rather than the indirect transfer (through its acquisition of SPX' Sealed Power Division),

neither that assurance nor such confidence relieved Dana of its knowledge of the right of first refusal. This is particularly true in light of the timely and vigorous protestations by Condumex once it learned of SPX' agreement to sell the Sealed Power Division to Dana. When it acquired that Division, and its subsidiary, SP Nevada, and the Promec shares held by SP Nevada (as that entity's sole asset), unquestionably Dana did so with knowledge of Condumex' right of first refusal.

As a general rule, specific performance can be directed against a purchaser who takes subject to notice of a right of first refusal, even though the purchaser was not a party to the original arrangement or agreement that created the encumbrance in the first instance. *Mayes v. Rapoport*, 198 F.3d 457, 466 (4th Cir.1999) (if seller breached right of first refusal, specific performance can be ordered against purchaser); *Phipps v. CW Leasing, Inc.*, 186 Ariz. 397, 923 P.2d 863, 866 (1996) ("buyer with actual or constructive notice of the right of first refusal takes the land subject to the right of first refusal and may also be subject to damages or specific performance."); *Newpar Estates, Inc. v. Barilla*, 4 A.D.2d 186, 164 N.Y.S.2d 132, 133 (App.Div.1957) (purchaser with notice of right of first refusal could be subjected to specific performance);*Stuart v. Stammen*, 590 N.W.2d 224, 229 (N.D.1999) (specific performance ordered where buyer knew of right of first refusal).

There appears to be no Delaware case (Delaware law being applicable, according to Dana) involving specific performance against a purchaser who took with knowledge of another's right of first refusal. But the courts of that state have consistently held that a purchaser with knowledge of an encumbrance can be the subject of a decree compelling specific performance. *Blum v. William Goldman Theatres*, 164 F.2d 192, 198 (3d Cir.1947) (specific performance ordered against purchaser who took with notice of rights of plaintiff); *Lowe v. Williams*, 18 A.2d 424, 426 (Del.Ch.1941) (specific performance will be ordered when the bill is filed against a subsequent grantee of the person who has agreed to sell if such grantee had notice of the grantor's prior contract of sale); *Long v. Chandler*, 98 A. 189, 190 (Del.Ch.1916) (specific performance could be ordered against purchaser who took title with notice of plaintiff's rights under a contract with the seller and of plaintiff's s efforts to enforce his rights); *Clough v. Cook*, 87 A. 1017, 1019–20 (Del.Ch.1913) (purchaser with knowledge of prior contract by seller to sell to another will be compelled to convey the property to the first purchaser).

Dana's specific contention that it could not be ordered to provide specific performance because it was not a party to the SPX/Condumex agreement was answered in *Ehrenstrom v. Phillips*, 77 A. 81, 83 (Del.Ch.1910), in which the Delaware Chancery Court stated:

The general rule is that the proper parties to a bill for specific performance of a contract for the sale of land are the parties to the contract. But there are exceptions. "Special cases may indeed exist in which the rule may be otherwise; but they stand upon their own peculiar facts." Story on Equity Pleading (9th Ed.) § 226, B.

Such exceptions exist in cases where the vendor by conveyance made after the making of the complainant's agreement has transferred the title to one who acquires with notice of the complainant's rights. The holder of the legal title is a necessary party in such cases in order that he be decreed to convey to the complainant the title. *Potter v. Sanders*, 6 Hare 1; *Kempshall*

*v. Stone*, 5 Johns. Ch. (N.Y.) 194; *Ferrier v. Buzick*, 2 Iowa, 136; *Morris v. Hoyt*, 11 Mich. 9. And this was done in two cases in the Delaware courts. *Kinney v. Redden*, 2 Del.Ch. 46, and *Maxfield v. Terry*, 4 Del.Ch. 618.

In view of these Delaware cases, there can be no question that the courts of that state would agree with and follow the general rule that specific performance can be ordered against a purchaser taking with knowledge of a right of first refusal.

The foregoing cases involve sales of real estate, while this case involves shares in a joint venture. Disposition of a joint venture's shares can be the subject of a decree of specific performance. *Cf. Sagamore Corp. v. Diamond West Energy Corp.*, 806 F.2d 373, 376 (2nd Cir.1986) (affirming decree ordering transfer of shares from one joint venturer to another).

### Conclusion

In light of the foregoing, I conclude that I continue to have jurisdiction to rule on Dana's objection to being, and having been, ordered to remedy rights granted to Condumex by SPX. I conclude, further, that no error occurred when I directed Dana to deliver the Promec shares at issue in this case directly to Condumex. Dana's motion for relief shall, accordingly, be overruled.

It is, therefore,

ORDERED THAT Dana's motion for relief from order be, and the same hereby is overruled.

So ordered.